# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANTHONY A. NASH, et al., )
)
    Plaintiffs, )
)
     v. )  C.A. No. 18-677 (MN)
)
KOLAWOLE AKINBAYO, et al., )
)
    Defendants. )

## **MEMORANDUM OPINION**


Anthony A. Nash, New Castle, Delaware; Jose Santiago, Morris Community Correctional Center, Dover, Delaware; and Reggie Folks, Howard R. Young Correctional Institution, Wilmington, Delaware.   Pro Se Plaintiffs.

Carla Anne Kingery Jarosz, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants Kolawole Akinbayo, Perry Phelps, and Steven Wesley.

Dana Spring Monzo, Esquire, and Karine Sarkisian, Esquire, White & Williams, Wilmington, Delaware.   Counsel for Defendant Connections CSP, Inc.


September 13, 2019
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

Plaintiffs Anthony Nash ("Nash"), Jose Santiago ("Santiago"), and Reggie Folks ("Folks") (collectively "Plaintiffs"), all former or current inmates at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, commenced this action on May 3, 2018, pursuant to 42 U.S.C. § 1983 [1] against State Defendants HRYCI Warden Kolawole Akinbayo ("Warden Akinbayo"), former Delaware Department of Correction ("DOC") Commissioner Perry Phelps ("Phelps"), and former HRYCI Warden and former Bureau of Prisons Chief Steven Wesley ("Wesley") (collectively "State Defendants") [2] as well as medical Defendant Connections CSP, Inc. ("Connections"). (D.I. 2). Plaintiffs filed an Amended Complaint on May 24, 2018 and it is the operative pleading. [3] (D.I. 10). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the Court are Defendants' motions to dismiss, opposed by Nash and Santiago (D.I. 54, D.I. 57); Nash's motion for leave to proceed *in forma pauperis* (D.I. 67); Nash's motion for class certification opposed by Defendants (D.I. 68); and Santiago's request for counsel (D.I. 74).

## I.      BACKGROUND

The Amended Complaint raises unlawful conditions of confinement and medical needs claims at the HRYCI as well as "any state law claims." (D.I. 10 ¶ 1). The matter was filed as a

---

[1]     When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]     Three other named Plaintiffs have been dismissed by the Court. (*See* D.I. 35, D.I. 79). The Court will not address allegations in the Amended Complaint that are directly related to a dismissed plaintiff. (*See, e.g*., D.I. 10 ¶¶ 41, 43, 44).

[3]     Only Nash signed the original Complaint. On May 15, 2018, the Court ordered Plaintiffs to file an Amended Complaint signed by all Plaintiffs.

proposed class action with Nash as the proposed class representative. (*Id*. ¶¶ 14-20). Since the filing of this action, Nash has been released from prison and Santiago has been transferred to the Morris Community Correctional Center in Dover, Delaware. (D.I. 56, D.I. 84). According to the web-site VINE-LINK, Folks is now housed at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, but he has not advised the Court of his transfer there. *See* https://vinelink.vineapps.com/search/persons (last visited Sept. 10, 2019).

Plaintiffs, all of whom were housed in Dorm One of the Key North Program at HRYCI, allege they were confined with inmates who were medically cleared, but suffered from contagious and fatal illnesses such as tuberculosis, hepatitis and/or AIDs. (D.I. 10 ¶ 26). The Amended Complaint alleges that inmates, such as Nash, were forced to sleep within 20 feet of 12 toilets and 15 showers that were often used throughout the night with frequent overflows on the floor described as "replete with fetid waste contaminated with HIV, hepatitis, and other contagious diseases found in blood and fecal matter." (*Id*. ¶ 27).

The Amended Complaint describes Dormitories One and Two as each containing 100 bunks, zero tables for eating, communal showers with faulty drainage so inmates are forced to stand in pools of contaminated water, and with toilets that sometimes back up. (*Id*. ¶¶ 28-31). Plaintiffs allege that the frequent flooding, cool temperatures, and lack of adequate ventilation resulted in a damp air climate in which visible toxic mold thrives on metal ventilation air ducts, metal ceilings, and overhead pipes. (*Id*. ¶¶ 32, 34). The Amended Complaint alleges that Nash became severely ill because of the exposure.[4] (*Id*. ¶ 32). Plaintiffs allege the black mold, dust, and bacteria fill the ventilation system and air ducts, and the toxic mold is so prevalent throughout

---

[4] The Amended Complaint does not provide the date or dates when Nash or any other plaintiff became ill as a result of the alleged conditions of confinement.

the dorms that it has become airborne and can be ingested merely by breathing. (*Id*. ¶¶ 32, 34). Plaintiffs allege that nearly every inmate housed in Dormitory One, including Nash, became ill with breathing and other issues. (*Id*. ¶ 32). Plaintiffs allege that they "have observed a pattern of indifference" to their medical needs. (*Id*. ¶ 37). Plaintiffs alleges that when Nash became ill, he was seen by medical staff on an unknown date, told he was suffering from allergies, and given a nasal spray. (*Id*. ).

Plaintiffs allege Defendants knew of the problems associated with the inadequate ventilation system and painted the air ducts black in a failed attempt to mask the toxic black mold. (*Id*. ¶¶ 35, 36). Plaintiffs allege that all "Defendants are aware of the overcrowding, inadequate ventilation, poor plumbing, and toxic and airborne mold issues which pervade" Dormitory One. (*Id*. ¶ 39). Plaintiffs allege that they "fear for their future because of the highly carcinogenic poison producing mold." (*Id*. ¶ 42). Plaintiffs allege they "have asthma attacks in the middle of the night and don't even have asthma." (*Id*.).

Plaintiffs allege that they sought to make complaints about the conditions, but there is "effectively, no functioning grievance process" at the HRYCI and "their cries for help have been ignored." (*Id*. ¶ 38). Santiago submitted a grievance complaining about black mold. (*Id*. ¶ 40). The Amended Complaint alleges that Santiago was threatened with solitary confinement by non-defendant Lt. Gray if Santiago did not sign off on the grievance.[5] (*Id*.). Plaintiffs allege that the HRYCI has a grievance process in name only. (*Id*. ¶ 46). They allege that on the rare occasion when an informal resolution is reached, it is only honored until correctional officers decide to disregard or breach the agreement. (*Id*.)

---

[5]     Santiago has filed a lawsuit against Lt. Gray, *Santiago v. Gray*, No. 18-814-RGA (D. Del.).

Count I alleges due process violations under the Fourteenth Amendment of the United States Constitution on behalf of all inmates past, present, and future, who are housed in Dormitories One and Two, for unlawful conditions of confinement, for failing to adopt necessary policies and training programs, and failing to properly supervise correctional officers assigned to HRYCI. (*Id.* ¶ 52). Count II alleges unlawful conditions of confinement under the Eighth Amendment of the United States Constitution on behalf of all inmates past, present, and future, who are housed in Dormitories One and Two, for failing to adopt necessary policies and training programs, and failing to properly supervise correctional officers assigned to HRYCI. (*Id.* ¶ 53).

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Hubbard v. Taylor*, 399 F. 3d 150, 166 (3d Cir. 2005). It is unclear if, at the time the action commenced, Nash, Santiago, and Folks were convicted inmates or pretrial detainees.

Plaintiffs seek compensatory and punitive damages, equitable relief, and injunctive relief. (*Id.* at Prayer for Relief).

## II.   **MOTIONS TO DISMISS**

### A.   **Legal Standard**

Because Plaintiffs proceed *pro se*, their pleading is liberally construed and their Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's

well-pleaded facts as true, but [disregarding] any legal conclusions." *Id*. at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). In addition, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.     Discussion**

State Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) Plaintiffs have failed to exhaust their administrative remedies as is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) the Amended Complaint alleges, without documentary support, that mold or toxic mold is present at the HRYCI and causes the medical symptoms complained of; (3) the claims are deficiently pled; and (4) the claims against State Defendants in their official capacities that seek monetary damages are barred by the Eleventh Amendment.   (D.I. 55 ¶¶ 2-5, 16).

Connections moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) Plaintiffs have failed to exhaust their administrative remedies as is required under the PLRA; (2) the authority to make decisions related to housing, conditions of confinement or grievance policies belong to the DOC, not Connections; (3) Plaintiffs have failed to plead a viable constitutional claim of deliberate indifference; and (4) Plaintiffs failed to attach an affidavit of merit as required under Delaware law for any potential medical negligence claims.   (D.I. 57 at 1).

Nash and Santiago filed oppositions to the motions.    (D.I. 59, D.I. 63, D.I. 65, D.I. 71). Folks did not.   Nash and Santiago argue that the Court has already screened the Amended Complaint and determined that it raised cognizable and non-frivolous claims within the meaning of 28 U.S.C. § 1915A(b) and § 1915(e)(2)(B).   While this is correct, the Court takes a second look at the Amended Complaint in light of the arguments posed by Defendants in their motions to dismiss.

Finally, to the extent Nash and Santiago attempt to amend the Amended Complaint by providing new facts and relying upon exhibits in their oppositions that were not attached to the

amended Complaint, they may not do so. Plaintiffs may not amend their complaint through opposition briefs, and new facts may not be considered by the Court on the instant motions to dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

### 1. Administrative Remedies

Defendants argue that dismissal is appropriate because Plaintiffs failed to exhaust their administrative remedies as required under the PLRA. In support of their motion, State Defendants submitted documents outside the pleadings. (*See* D.I. 55 at Exs. A, C, D, grievances submitted by Nash, Folks, and Santiago). In their oppositions, Nash and Santiago also submit documents outside the pleadings. (*See* D.I. 59 at Ex. A at 25-27, Boyles grievances; D.I. 71-2 at Ex. B at 15-20). As will be discussed, because resolving the issue of administrative exhaustion requires examination of factual matters well outside the pleadings, these documents are not considered.[6] Connections argues that the Amended Complaint must be dismissed as a matter of law because there are no allegations that any plaintiff submitted a grievance related to his own medical condition or treatment, let alone complete the remedies available to him.

Both Nash and Santiago contend dismissal is not appropriate because they submitted grievances relating to inhumane conditions of confinement and the grievance officer, Cpl. Grose

---

[6]     The Federal Rules of Civil Procedure provide that when a motion to dismiss is filed pursuant to Rule 12(b)(6) and matters outside the pleadings are presented to and not excluded by the Court, the matter shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(d). The Court does not consider the documents submitted by the parties. Thus, the instant motions are treated as motions to dismiss pursuant to Fed. R. Civ. P. 12(b).

("Grose") converted all grievances into a group grievance.[7]   (D.I. 59 at 3; D.I. 76 at 4).   Nash and Santiago contend that, rather than allowing Nash to represent his peers, the grievance committee chose inmate Andrew Mudry ("Mudry") who was scheduled for release and then scheduled the grievance hearing after Mudry's release.   (*Id.*).   State Defendants respond that Mudry remained housed at the HRYCI until July 20, 2018, "well after suit was filed."   (D.I. 62 at 3-4).   State Defendants further argue that the assertions regarding the Mudry group grievance are invalid.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former. *See Jones v. Bock*, 549 U.S. 199, 219-20 (2007).

As alleged in the Amended Complaint, "there is, effectively, no functioning grievance process" at the HRYCI, and Plaintiffs have been "denied access to an effective, functioning grievance process."   (D.I. 10 ¶¶ 38, 39).   In addition, Plaintiffs allege that Santiago was

---

[7]     The Court is aware that joint or consolidated grievances have been used by the Delaware Department of Correction and, in those instances, each inmate's name and SBI number are contained in the joint grievance.   To the extent that other inmates may have submitted grievances raising the same issues, Plaintiffs are not excused from filing their own grievance.   "To allow [Plaintiffs] to circumvent the PLRA's exhaustion requirement because other inmates filed similar grievances would be contrary to Congress's intent in enacting the [PLRA]."   *Laureano v. Pataki*, No. 99Civ.10667 (LAP), 2000 WL 1458807, at *2 (S.D.N.Y. Sept. 29, 2000); *see also Martin v. Gold*, No. 1:05-CV-28, 2005 WL 1862116, at *7 (D. Vt. Aug. 4, 2005) (same); *cf. Boyer v. Taylor*, No. 06-694-GMS, 2013 WL 1332443, at *4 n.6 (D. Del. Mar. 30, 2013) (noting that "vicarious exhaustion" has not been recognized "except in some circuits when it has been permitted in § 1983 class actions filed by inmates" and citing cases).

threatened with solitary confinement "if he did not sign off on the grievance."[8]  (*Id.* ¶¶ 40, 46).

Finally, the Amended Complaint alleges that "there is no effective grievance process in place by

which . . . inmates with genuine health concerns could seek redress of their concerns."  (*Id.* ¶ 45).

The "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove; it

is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265,

268 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. at 212, 216-17).  Hence, when the failure to

exhaust is raised as the basis for a motion to dismiss, dismissal is appropriate only where the failure

to exhaust is "apparent from the complaint or other documents before the [Court]."  *Ray v. Kertes*,

285 F.3d 287, 297 (3d Cir. 2002).

"[T]o properly exhaust administrative remedies prisoners must 'complete the

administrative review process in accordance with the applicable procedural rules,' rules that are

defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at

218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  In addition, the PLRA "requires only

'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'."

*Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (quoting *Woodford*, 548 U.S. at 93).

"The availability of administrative remedies to a prisoner is a question of law."  *Brown v. Croak*,

312 F.3d 109, 111 (3d Cir. 2002).  The Third Circuit has defined "available" administrative

remedies "as those that are 'capable of use; at hand.'"  *Robinson v. Superintendent Rockview SCI*,

---

[8]      It is unclear if Plaintiffs intended to raise a claim regarding the alleged inadequate
grievance process.  To the extent they raise claims based on dissatisfaction with the
grievance procedure or denial of grievances, the claims fail because an inmate does not
have a "free-standing constitutionally right to an effective grievance process." *Woods v.
First Corr. Med., Inc.,* 446 F. App'x 400, 403 (3d Cir. Aug. 2011) (citing *Flick v. Alba*,
932 F.2d 728, 729 (8th Cir. 1991)).  The denial of grievance appeals does not in itself give
rise to a constitutional claim as Plaintiffs are free to bring a civil rights claim in District
Court as they have done.  *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir.
2009) (citing *Flick v. Alba*, 932 F.2d at 729).

831 F.3d 148, 153 (3d Cir. 2016) (quoting *Brown*, 312 F.3d at 113). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small v. Camden Cty.*, 728 F.3d at 271.

State Defendants argue that Plaintiffs failed to attach evidence that they exhausted administrative remedies prior to commencing this action. Connections argues that dismissal is appropriate because there are no allegations that any plaintiff submitted a grievance relating to his own specific medication condition or treatment or that any plaintiff completed the administrative remedies available to him.

Plaintiffs argue that dismissal is not appropriate for failure to exhaust because administrative remedies became unavailable when the Mudry group grievance was submitted and then denied after Mudry was discharged from prison and because Santiago was threatened with solitary confinement if he did not sign off on his grievance. Their positions are consistent with the allegations of the Amended Complaint that administrative remedies were not available to them. *See Ross v. Blake*, __ U.S.__ 136 S.Ct. 1850, 1860 (2016) (holding an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); *see also See Rinaldi*, 904 F.3d at 267 ("administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm.").

In addition, the Amended Complaint contains nothing to indicate that Plaintiffs did not exhaust their administrative remedies prior to filing the lawsuit. (D.I. 10 ¶¶ 38, 46). Rather, the Amended Complaint alleges that Nash (the proposed class representative) made or sought to make complaints concerning some or all of the conditions of confinement. (*Id*. ¶ 38). The Court does not read Paragraph 38 as an affirmative statement of failure to exhaust.

Finally, contrary to Defendants' positions, Plaintiffs are not required to produce evidence of exhaustion when filing their complaint. Exhaustion "requires only . . . exhaustion of those administrative remedies that are 'available'," *Rinaldi*, 904 F.3d at 266, and as stated previously, "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small*, 728 F.3d at 268. At this stage, Defendants' positions on the exhaustion issue do not warrant dismissal.

Defendants filed motions to dismiss, not motions for summary judgment. As is clear from the above discussion, resolving the issue of administrative exhaustion in this case would require examination of factual matters well outside of the pleadings. Hence, the exhaustion issue is not amenable to resolution at this stage. Accordingly, the Court will deny Defendants' motions to dismiss for Plaintiffs' failure to exhaust administrative remedies. Defendants are free to raise the issue again in a properly filed motion for summary judgment.

## 2. Eleventh Amendment

State Defendants seek dismissal of claims raised against them in their official capacities on the grounds that Plaintiffs have not alleged that any official policy or custom caused their alleged constitutional deprivations, relying upon *Monell v. Department of Soc. Services of the City of New York*, 436 U.S. 658, 690-691 (1978) for the proposition that dismissal is appropriate "unless, the suit alleges that the governmental body adopted or promulgated an official policy or custom that causes its employees to deprive the plaintiff of his constitutional rights."[9] (D.I. 55 at 8). Nash

---

[9]     State Defendants rely upon *Monell* to support dismissal under the Eleventh Amendment. *Monell* speaks to the issue of municipal or local government liability pursuant to § 1983. *See, e.g.*, *Povish v. Pennsylvania Dep't of Corr.*, Civ.A. No. 13-0197, 2014 WL 1281226, at *3 (E.D. Pa. Mar. 28, 2014) ("The effect of *Monell* is to allow suit against municipalities, not the states themselves or agencies thereof."). Under *Monell*, a plaintiff must identify the policy, custom, or practice of the municipal defendant that results in the constitutional violation. *Monell*, 436 U.S. at 690-91 and n.55.

argues that Defendants have a policy or custom of deliberate indifference by allowing and ignoring deplorable conditions, exposing inmates to the conditions, and ignoring inmates' cries for help. (D.I. 59 at 5).

The Eleventh Amendment shields states from suits by individuals absent a state's consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). The doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the State of Delaware, from suits by citizens. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Seminole Tribe v. Florida*, 517 U.S. at 54. State officials have Eleventh Amendment immunity when they are sued in their official capacity and the state is the real party upon which liability is to be imposed. *See Scheuer v. Rhodes*, 416 U.S. 232, 237-38, (1974). Consequently, any and all claims seeking money damages against State Defendants in their official capacities are barred by sovereign immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

In addition to compensatory damages, Plaintiffs also seek injunctive relief. An exception to Eleventh Amendment immunity allows suit in federal court against state officials in their official capacities for "prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155-156, 159, (1908)). The exception applies only to officials, not states or agencies themselves. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 100-01. Plaintiffs' official capacity claims seeking injunctive relief are not subject to dismissal.

Accordingly, the Court will grant State Defendants' motion to dismiss the official capacity claims raised against State Defendants that seek monetary damages.

### 3.    Personal Involvement/Respondeat Superior

State Defendants seek dismissal on the grounds that the Amended Complaint does not allege their specific personal conduct, dates, times and actions or inactions amounting to constitutional violations.    They argue that the Amended Complaint simply lumps Defendants into a group with allegations of harm and wrongful conduct with no level of specificity necessary to establish personal action.

Nash responds that Warden Akinbayo has been named as the individual who is responsible for the safety and security of his facility.    (D.I. 59 ¶ 5)    He further argues that Warden Akinbayo and former HRYCI Warden Wesley both had "involved knowledge of the inadequate ventilation and black mold through years of complaints" and that in 2016 an inmate nearly died from chronic lung disease as a consequence of the toxic black mold exposure.    (D.I. 59 at 4-5).    The Amended Complaint, however, does not contain these allegations and they are not considered by the Court.

Nash also argues that he is not relying upon a respondeat superior theory to hold Defendants liable.    Rather, his position is that Defendants have a policy or custom of deliberate indifference by allowing and ignoring deplorable conditions, exposing inmates to the conditions, and ignoring the inmates' cries for help.    (D.I. 59 at 5).    Plaintiffs do not address the alleged personal involvement of Phelps in their responses.

Count I and II allege, in a purely conclusory manner, that Defendants (without identifying a particular defendant) "are either themselves directly responsible for the unlawful conditions [], or are the proximate cause of those unlawful conditions by failing to adopt necessary policies and necessary policies and training programs and by failing to properly supervise correctional officers

assigned." (D.I. 10 ¶¶ 49, 53). The Amended Complaint does not provide facts to support these claims; most notably, no defendant is specifically identified. "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, at 556 U.S. at 676-77. The Amended Complaint fails in this regard.

In addition, as noted in the Background Section, Plaintiffs raise the same claim under both the Eighth and Fourteenth Amendments, presumably for claims on behalf of pretrial detainees as well as sentenced inmates. The analysis of whether a supervisor may be held individually liable in a § 1983 case is the same regardless of whether the Eighth or Fourteenth Amendment applies. *Compare Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 316-17 (3d Cir. 2014 (analyzing supervisory liability in an Eighth Amendment case) *with Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *3-4 (E.D. Pa. June 14, 2017) (applying the same analysis in a Fourteenth Amendment case). To survive dismissal, the Amended Complaint must allege that Defendants adopted policies with deliberate indifference, *i.e*., a reckless disregard of a known risk of harm. *See Barkes*, 766 F.3d at 319-20 ("[A] state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, [must have] allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur.").

Even a liberal construction of the Amended Complaint does not allege the requisite personal involvement that any Defendant was aware of inherent risk in failing to adopt necessary policies, yet chose not to.[10] *See Barkes*, 766 F.3d at 330 (adopting four-part test for determining

---

[10] To the extent Plaintiffs intended to raise conditions of confinement claims under the Eighth and Fourteenth Amendments, the claims similarly fail for the failure to allege the requisite personal involvement of Defendants. *See Chavarriaga v. New Jersey Dep't of Corr*., 806 F.3d 210, 226 (3d Cir. 2015) (To prevail on a conditions of confinement claim under the Eighth Amendment, an inmate must allege, "(1) the prison official deprived the prisoner

when a supervisor may be deliberately indifferent under the Eighth Amendment: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.") (citation omitted). As pled, there are insufficient facts to meet these standards. Simply alleging that Defendants are "directly responsible" or "the proximate cause" for failing to adopt necessary policies and training programs, without more, does not suffice to state claims for relief. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (the actual knowledge requirement for the deliberate indifference standard of prison condition claims requires that officials "actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware").

Further, while the Amended Complaint refers to medical ailments of several inmates, there are no dates to indicate when the inmates' medical problems occurred or that any State Defendant was aware of a specific inmate's medical condition and treatment or the lack thereof. "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3e Cir. 2004). As alleged, the Amended Complaint fails to state a medical needs claim against State Defendants.

---

of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.); *Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (to prevail on a conditions of confinement claim under the Fourteenth Amendment, a pretrial detainee must plausibly allege that the challenged conditions of confinement amount to punishment).

Finally, despite Nash's argument to the contrary, the Amended Complaint clearly alleges liability based upon Defendants' supervisory positions. As is well-established, there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

Accordingly, the Court will grant State Defendants' motion to dismiss on the grounds that the Amended Complaint fails to adequately allege personal involvement of State Defendants as is required for a § 1983 claim. Because Plaintiffs may be able to cure their pleading defects and state a plausible claim for relief, they will be given leave to file a second amended complaint as to the constitutional claims.[11]

### 4.    Deliberate Indifference to Serious Medical Needs

Connections contends dismissal is appropriate because it cannot be held liable for any claims related to the housing placement, conditions of confinement, or grievance policies as it has no role or authority in making those decisions or maintaining the facilities. It also moves for dismissal of the medical needs claims on the grounds that the Amended Complaint fails to show how it was deliberately indifferent to Plaintiffs' serious medical needs and fails to show a deficient

---

[11]    The Court does not address State Defendants' argument that dismissal is appropriate because the allegations of the existence of toxic mold without "nothing more in the way of support other than the unsupported factual allegations of inmates who lack specialized scientific training and/or knowledge and have performed no analysis or testing whatsoever to substantiate" the presence of mold, the presence of mold at levels higher than background or ordinary environmental levels, the presence of "toxic mold" or molds which have been recognized as posing a hazard to humans, and the presence of said molds at levels above background levels or in amounts sufficient to pose a risk of harm. (D.I. 55 ¶ 4). State Defendants rely upon an incorrect standard in seeking dismissal on this ground. It is not necessary at the pleading stage for Plaintiffs to support their claims with allegations from inmates who have specialized scientific training or knowledge. The standard is whether, as alleged, the Amended Complaint states a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

policy or custom that posed an unreasonable risk of harm that Connections had knowledge of and ignored.[12] It argues that, at most, Plaintiffs allege medical negligence.

Santiago argues that Connections has been turning a "blind eye" to inmates' inhumane conditions of confinement for years and, therefore, it cannot attempt to "dump" its liability on the State. (D.I. 76 at 5). He also argues that Connections is contracted with the DOC to provide medical and treatment programs for incarcerated individuals and, therefore, is liable under general contract law principles. (*Id.*). Finally, Santiago argues that Defendants have a policy or custom of committing deliberate indifference and allowing atypical hardship on inmates by allowing and ignoring deplorable conditions for years and then not providing inmates with adequate medical care. (*Id.* at 7).

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Connections is directly liable for the alleged constitutional violations, Plaintiffs "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d at 584 (because respondeat superior or vicarious

---

[12]     The Due Process Clause of the Fourteenth Amendment affords pretrial detainees protection for medical needs claims, *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977), and the Eighth Amendment affords sentenced inmates protection for medical needs claims, *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). When evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that set forth in *Estelle v. Gamble* under the Eighth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d at 318 F.3d 575, 581 (3d Cir. 2003).

liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

As pled, the Amended Complaint does not include allegations that individual medical defendants violated Plaintiffs' constitutional rights under the Eighth or Fourteenth Amendments. At most, the Amended Complaint alleges that Nash was dissatisfied with medical treatment provided to him on an unnamed date by an unknown medical provider, but this does not rise to the level of a constitutional violation.[13]  *See Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (prisoner has no right to choose a specific form of medical treatment, so long as treatment provided is reasonable).  Nor does the Amended Complaint adequately allege the requisite personal involvement of any individual Defendant or medical personnel with regard to unlawful conditions of confinement.  *See James v. Varano*, No. 1:14-CV-01951, 2016 WL 4539195, at *n.6 (M.D. Pa. Aug. 31, 2016) (inmate's conditions-of-confinement claim against contracted medical providers is not cognizable).

Plaintiffs offer nothing to support the claims against Connections other than conclusory allegations.  As alleged, Connections cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Plaintiffs' rights. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights).

---

[13]     The Amended Complaint contains no allegations that Santiago or Folks sought medical care.

Accordingly, the Court will grant Connections' motion to dismiss the claims raised against it. Because Plaintiffs may be able to cure their pleading defects and state a plausible claim for relief, they will be given leave to file a second amended complaint as to the constitutional claims.

### 5. Medical Negligence

Connections moves for dismissal of any medical negligence claims on the grounds that Plaintiffs failed to attach an affidavit of merit as required under Delaware law. In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. *See* 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care; (2) the alleged deviation from that standard; and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853.

To the extent Plaintiffs allege medical negligence, at the time they filed the complaint they were required to submit an affidavit of merit as to each defendant signed by an expert witness. *See* 18 Del. C. § 6853(a)(1). Plaintiffs did not comply with this requirement. Therefore, the Court will grant Connections' motion to dismiss any potential medical negligence claims.

## III. <u>CLASS ACTION</u>

Nash moves for class certification on his behalf and on behalf of Santiago and Folks.[14] The Amended Complaint names Nash as the proposed class representative. (D.I. 10 ¶ 14). Defendants oppose. (D.I. 70, D.I. 72).

---

[14] Nash is not an attorney and may not file pleadings, motions, or documents on behalf of the other Plaintiffs.

## A.    Legal Standards

Four prerequisites must be met to obtain certification of a class:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  "If all four requirements of Rule 23(a) are met, a class of one of three types (each with additional requirements) may be certified" under Rule 23(b).  *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 309 n.6 (3d Cir. 2008).

Nash seek certification under Rule 23(b)(3), which states that "[a] class action may be maintained if Rule 23(a) is satisfied and if: (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These are known as the predominance and superiority factors of Rule 23(b)(3).  The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).  Certification is only proper "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met."  *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d at 309 (footnote and quotation marks omitted).

## B.    Discussion

Nash argues that the requisites for class certification have been met.  (D.I. 69).  Conversely, Defendants argue that the requirements for class certification have not been met. (D.I. 70, 72).

Nash cannot fulfill the requirements of Rule 23(a). Even were the Court to accept his argument that the first three requirements (numerosity, commonality, and typicality) are met, as a *pro se* plaintiff, he cannot adequately represent the interests of other class members. *See Blue v. Defense Logistics Agency*, 181 F. App'x 272, 275 (3d Cir. 2005) (citing *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)). In addition, as discussed above, although Plaintiffs will be given leave to amend, the Amended Complaint will be dismissed as deficiently pled and, therefore, the commonality factor has not been met. Finally, even were Nash represented by an attorney, he would not "possess the same interests and suffer the same injury" as the class inasmuch as he is no longer an incarcerated individual and it appears that none of the named Plaintiffs remain housed at the HRYCI. Thus, the typicality factor has not been met. Nash has not met his burden to establish that class certification is proper. Therefore, his motion for class certification will be denied. (D.I. 68).

## IV.    MISCELLANEOUS MOTIONS

### A.    Application to Proceed *In Forma Pauperis*

Nash, who has been released from prison, has filed a long form application to proceed in district court without prepaying fees or costs. (D.I. 67). The Court will grant the motion.

### B.    Request for Counsel

Santiago requests counsel on the grounds that he is incarcerated and, because of his incarceration, it is impossible to obtain discovery, sensitive documents and videos from the DOC, and witness testimony. (D.I. 74). He also states that he cannot afford legal representation. (*Id.*). Santiago proceeds *pro se* and has been granted leave to proceed *in forma pauperis*.

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[15]  *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).   However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law.   *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel.   Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony.   *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.   The list is not exhaustive, nor is any one factor determinative.   *Tabron*, 6 F.3d at 157.

Assuming, solely for the purpose of deciding this motion, that Santiago's claims have merit in fact and law, several of the *Tabron* factors militate against granting his request for counsel. The filings demonstrate Santiago's ability to articulate his claims and represent himself and the case is in its early stages.   Therefore, at this juncture, the Court will deny Santiago's request for

---

[15]    *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

counsel without prejudice to renew.   Should the need for counsel arise later, one can be sought at that time.

## V.   <u>SHOW CAUSE</u>

Folks, along with the other Plaintiffs commenced this action on May 3, 2018.   (D.I. 2). The last action taken by Folks occurred on June 28, 2018, when he filed his authorization form requesting that the Prison Business Office disburse filing fee payments to the Courts.   (D.I. 31). Folks did not file responses to Defendants' motions to dismiss.   Nor did he advise the Court of his transfer to the JTVCC.

Because more than three months have passed since Folks has taken any action in this case, including his failure to file oppositions to Defendants' motions to dismiss and his failure to advise the Court of his new address, he will be ordered to show cause why he should not be dismissed as a plaintiff for failure to prosecute, pursuant to D. Del. LR 41.1.

## VI.   <u>CONCLUSION</u>

For the above reasons, the Court will:    (1) grant in part and deny in part State Defendants' motion to dismiss (D.I. 54); (2) grant in part and deny in part Connections' motion to dismiss (D.I. 57); (3) dismiss the Amended Complaint and give Plaintiffs leave to file a second amended complaint as to only the constitutional claims; (4); grant Plaintiff Anthony Nash's renewed motion for leave to proceed *in forma pauperis* (D.I. 67); (5) deny Plaintiff Anthony Nash's motion for class certification (D.I. 68); (6) deny without prejudice to renew Plaintiff Jose Santiago's request for counsel (D.I. 74); and (8) order Plaintiff Reggie Folks to show cause why he should not be dismissed as a plaintiff for his failure to prosecute the case.

An appropriate order will be entered.